Filed 6/2/25  P. v. Zarut CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>JAVIER ZARUT,<br><br>    Defendant and Appellant. | A169317<br><br>(San Francisco County<br> Super. Ct. No. 22005435) |

Javier Zarut was convicted of voluntary manslaughter and sentenced to the upper term.  He contends the trial court failed to appreciate its discretionary authority to impose a lower term despite the jury having found true the alleged aggravating factors.  We affirm.

## BACKGROUND

### I.

### *Procedural Background*

An amended information filed on October 4, 2023, charged Zarut with murder (Pen. Code,[1] § 187, subd. (a)), with allegations that he personally

---

[1]  Further statutory references will be to the Penal Code.

1

used a deadly weapon (§ 12022, subd. (b)(1).)[2] The information alleged six aggravating circumstances (Cal. Rules of Court,[3] rule 4.421).

A jury found Zarut not guilty of murder but guilty of the lesser offense of voluntary manslaughter (§ 192, subd. (a)) and found true the allegation that Zarut personally used a deadly weapon. The jury found true three of the alleged aggravating circumstances: that "the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness" (rule 4.421(a)(1)), that Zarut "was armed with or used a weapon at the time of the crime" (rule 4.421(a)(2)) and that Zarut "engaged in violent conduct which indicates a serious danger to society" (rule 4.421(b)(1)).[4]

At sentencing on November 3, 2023, the trial court struck the arming enhancement[5] and sentenced Zarut to the upper term of 11 years. He filed a timely notice of appeal on November 20, 2023.

---

[2] The amended information also charged a codefendant in the offense. We describe only the allegations pertaining to Zarut.

[3] Further references to rules will be to the California Rules of Court.

[4] The other aggravating circumstances alleged in the amended information were that the victim "was particularly vulnerable" (rule 4.421(a)(3)) and Zarut "induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission" (rule 4.421(a)(4)). The amended information also alleged "[a]ny other factors statutorily declared to be circumstances in aggravation, or which reasonably relate to [Zarut] or the circumstances under which the [murder] was committed," with notice of incidents on April 24, 2019, and November 16, 2021, documented in identified San Francisco police reports (rule 4.421(c)).

[5] The prosecutor had asked the court to stay sentence on the arming enhancement and use it as a factor in aggravation, so as not to "doubly punish[]" Zarut.

2

## II.

### *Factual Background*

On June 3, 2022, Elijah Wallace was stabbed and died from a wound to his chest that ran from under the left side of his clavicle to the area near the lower left side of his neck, causing significant hemorrhage from major vessels including the carotid artery.

Joshua Schodorf witnessed a fight between Zarut and Wallace near the intersection of 15th Street and South Van Ness Avenue in San Francisco. Schodorf first noticed two people arguing across the street from where he was standing, yelling at each other, trying to throw punches and wrestling on the ground. They separated, then a man wearing an orange shirt and a Santa hat, whom Schodorf believed to be homeless, pulled out two knives and handed a long knife to a shorter man wearing a "darker shirt," pants and socks but no shoes, who Schodorf identified at trial as Zarut.[6] At this point, Schodorf began recording the incident on his cell phone. The video was played at trial.

The man in the Santa hat also had a weapon but did not get involved in the fight. Zarut pursued Wallace and appeared to be taunting him as Wallace tried to get away. Schodorf saw Wallace try to run and grab his dog, heard a scream and saw Wallace go halfway down the block before lying on the ground. Schodorf stopped recording and called 911. When the police arrived, he pointed them to Zarut and the person in the Santa hat and told the police he had recorded the incident.

---

[6] The man in the Santa hat was the second person charged in the case. (See footnote 2, *ante,* p. 2.)

3

Schodorf did not see how the fight started or how it turned physical. After the knife appeared, as Wallace tried to get away, he continued to face Zarut; Schodorf did not remember Wallace taking a fighting stance. He did not see a knife or other weapon in Wallace's hands.

Another witness, Joanne Scott, was in a car on 15th Street, heading toward South Van Ness when she noticed three people fighting in the street. Her husband stopped the car, and she saw the three "swinging at each other." One of the three, a tall man in an orange shirt and Santa hat, had a knife with a blade that was about 12 inches long and had a "curved" tip. Another of the men was "smaller" and wearing a dark shirt. The men were "circling," and "some shoes came off." The third person "lurched out of the fight at a certain point and started to fall toward the sidewalk," then "they disappeared behind a car" and Scott could no longer see them. She did not see the smaller man with any weapons; she testified that as her car came to the intersection, she made eye contact with the smaller man, who was in the street and "pretty agitated," and was not looking to see if he had anything. The smaller man had blood on one side of his face. Scott called 911.

Police officers arrived at the scene and took over from bystanders who were attempting to render aid to Wallace, who was lying on the ground.[7] Wallace was bleeding profusely from a wound to his chest; one of the officers testified it was the most blood he had ever seen coming from a single wound. Zarut had small lacerations on his face.

---

[7] Police Officer Gustavo Lopez was asked on cross examination about observing other officers restraining the victim from fleeing the scene and responded, "That's incorrect. Based on what I observed, that wasn't his action." He acknowledged having testified at the preliminary hearing that he observed other officers restrain Wallace as he attempted to flee the scene.

Officer Lopez detained Zarut at the scene. Zarut complied with the officer's orders. Lopez testified that when he asked whether Zarut had any weapons, Zarut said, "the knife that I stabbed him with is in the tent." Asked if he remembered whether Zarut used the word "stabbed," Lopez testified that he recalled Zarut saying "the knife that I killed him with is in the tent."[8] Zarut gestured toward the tent and said, "it's in the front part of the tent."

Police Officer Laura Presley looked inside the tent after being advised that there was knife there. She saw a metal object with fresh blood on it. The weapon, which had a blade about 18 to 20 inches long, was displayed to the jury at trial.

Zarut presented no witnesses at trial. The primary theory of the defense, as argued by counsel, was that Zarut acted in self-defense.[9] Defense counsel also argued involuntary and voluntary manslaughter as alternative theories, including telling the jury that the latter could be based on a sudden

---

[8] Lopez spoke with Zarut in Spanish, the officer's "primary" language, when he realized Zarut did not speak English. Lopez speaks Mexican Spanish and Zarut spoke a Cuban dialect, but Lopez testified that this did not impact his ability to communicate with Zarut. Asked further about whether Zarut used the word "stabbed" or "killed," Lopez acknowledged that at the preliminary hearing he referred to Zarut having said he "stabbed" Wallace but testified that this was a mistake and that the exact translation of the word he used in his report is "killed."

[9] In arguing that Zarut reasonably believed he was in imminent danger of being killed or suffering great bodily injury, reasonably believed immediate use of deadly force was necessary to defend against this danger, and used no more force than was reasonably necessary, counsel argued points including that Wallace came to Zarut's home and injured Zarut in the fight, that Wallace's behavior showed he was not going to stop fighting, and that Zarut stabbed Wallace only once, in the area of his shoulder, and the only reason he caused so much damage was the length of the blade, which Zarut did not choose.

5

quarrel that provoked Zarut so as to cause him to act rashly, under the influence of intense emotion that obscured his reasoning or judgment (and would have so provoked a person of average disposition).

## DISCUSSION

## I.

### *Additional Background*

#### A. The Parties' Positions on Sentencing

The probation report recommended that the court deny probation and sentence Zarut to an aggregate prison term of 12 years, the upper term of 11 years for the manslaughter conviction plus 1 year for the arming enhancement. The report listed two circumstances in aggravation—the crime involved great violence or other conduct disclosing a high degree of cruelty, viciousness or callousness (rule 4.421(a)(1)) and Zarut engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1))—and one mitigating circumstance—Zarut had no prior record (rule 4.423(b)(1)).

Zarut's sentencing memorandum urged the court to grant probation or, if it denied probation, impose a lower term sentence. The memorandum described Zarut's circumstances: He lawfully immigrated to the United States in 2014, at age 42, to join his father; his father lost their housing soon after Zarut moved in; and Zarut remained unhoused for the five years preceding the murder, living on the street mostly at 15th Street and South Van Ness Avenue. Zarut smoked marijuana but did not have substance abuse issues. He had been arrested twice for assaultive conduct but had never been charged with a crime.

The memorandum noted the three aggravating circumstances found true by the jury, then listed 13 aggravating circumstances that did not apply (rule 4.421(a)(3)–(a)(6), (a)(8)–(a)(12), (b)(2)–(b)(5)) (and had not been

6

alleged). The defense urged that six mitigating factors applied. Three of these related to the crime: First, the victim was "an initiator of, willing participant in, or aggressor or provoker of the incident" (rule 4.423(a)(2)), in that the victim engaged in a heated argument with Zarut that resulted in injuries to Zarut's face; second, the crime was committed "because of an unusual circumstance, such as great provocation, that is unlikely to recur" (rule 4.423(a)(3)), as the jury found Zarut not guilty of murder but guilty of voluntary manslaughter, which offense the defense characterized as "[b]y its very nature . . . a result of great provocation—here, a fight"; and third, Zarut, "with no apparent predisposition to do so, was induced by others to participate in the crime" (rule 4.423(a)(5)), in that the fight resulted from the victim coming to the tent that was Zarut's home and the knife was not Zarut's but rather was handed to him by his codefendant after the fight had started. The other three factors the defense urged related to Zarut: First, he had no prior record (rule 4.423 (b)(1)); second, he had "experienced . . . physical . . . trauma . . . [that] was a factor in the commission of the crime" (rule 4.423(b)(3)), in that his two prior arrests resulted from incidents in which he was the victim of random attacks that occurred while he was unhoused and the present incident also involved a fight while Zarut was unhoused; and third, he "voluntarily acknowledged wrongdoing before arrest [and] at an early stage of the criminal process" (rule 4.423(b)(8)), as he was compliant when the police arrived, he immediately told Officer Lopez he used a knife and the knife was in his tent, and he was not given an opportunity to resolve the case prior to trial since the prosecutor did not extend an offer. The memorandum asserted that the

mitigating factors outweighed the aggravating ones and the court therefore "may not impose the high term."[10]

At the sentencing hearing, defense counsel added a mitigating circumstance not included in the memorandum, that Zarut suffered from "a physical condition that makes him particularly vulnerable" in that he had stomach cancer and prison therefore "would not be the same for [him] as it would be for another individual." Counsel emphasized that the jury found Zarut did not act with malice and argued that the offense was "a rare occurrence" that "by its nature" was "unlikely to recur."

The prosecutor took issue with the mitigating circumstances the defense relied on. According to the prosecutor, defense counsel's assertion that the victim initiated the incident was not borne out by the evidence.[11] The prosecutor described the video of the incident as showing Zarut "approaching [Wallace] with a long knife" and Wallace "backpedaling, backpedaling, backpedaling until Mr. Zarut gets close enough to try to stab him," and "then, Mr. Wallace[] takes swings to defend himself." The prosecutor urged that defense counsel had acknowledged that Zarut was involved in two prior stabbings, thus contradicting the defense argument that

---

[10] The defense memorandum argued that the sentencing factors listed in the probation officer's report were incomplete and inaccurate, identifying two factors in aggravation although the jury found three, and identifying only one mitigating factor while the defense identified six.

[11] In this regard, the prosecutor pointed to a statement, apparently not put in evidence at trial, in which Zarut told the police that when the victim approached him, there was a verbal argument and Zarut immediately grabbed the knife and swung it five or six times at Wallace. When defense counsel later began to respond to this point, the court stated it did not think the People had introduced this statement and it did not actually have the statement, and defense counsel did not further address it.

the present offense was committed due to an unusual circumstance unlikely to recur. The third mitigating factor cited by the defense, that Zarut was induced by others to participate in the crime, according to the prosecutor, similarly attempted to ignore the prior stabbing incidents. The prosecutor acknowledged that Zarut did not have prior convictions but disputed whether he had experienced physical trauma, stating that the defense argument in this regard was based on the two prior stabbings and "asking the court to infer that Mr. Zarut was the victim in those cases," but there are many reasons a person might not be charged with a crime, including the victim's level of cooperation and the People's ability to locate victims. The prosecutor argued that the defense's reliance on the mitigating factor that Zarut acknowledged wrongdoing before arrest was based on an inaccurate representation of the meaning of this factor, as Zarut never accepted his wrongdoing.

Addressing the aggravating circumstances found by the jury, the prosecutor argued, "We cannot ask the jurors to make a decision on factors in aggravation only to then ask the Court to ignore those factors." The prosecutor stated his position was that the court was to "essentially presume the midterm" and the three factors in aggravation justified imposing the upper term.

## B. The Trial Court's Order

The trial court began by telling Zarut that it accepted that his life had been challenging, living as he did was difficult and traumatic and the circumstances that brought him to these circumstances were traumatic. The court stated that it was taking these mitigating factors into consideration but found the aggravating circumstances "greatly outweigh[ed]" the mitigating ones. The court explained, "And in part that is because the [L]egislature has

9

determined, as the People have argued, that where a sentence is to be enhanced, it should be based upon a finding of a unanimous jury.  And in this case, the jury has unanimously found that all three factors in aggravation, California Rules of Court[, rule] 4.421(a)(1), 4.421(a)(2), and 4.421(b)(1) to be true, that required them to consider the evidence and to reach that conclusion unanimously.  These are important factors."  The court noted that in addition to Zarut using a weapon, his codefendant also had a weapon and the victim was unarmed.  The court stated that "perhaps the [factor] that is most significant in my decision, is that the jury—jury of your peers, our peers—has concluded that the violent conduct in which you engaged indicates a serious danger to society."

The court continued, "We vest the jury with the discretion to make that determination after considering the evidence, and they have done so. · And so for me to sentence you as your counsel has asked me to would be to the contrary to what the jury, which heard all the evidence in a very well-presented case by your two counsel, who advocated vigorously on your behalf, presented a vigorous defense on your behalf, concluded. · And so it would be antithetical to the [L]egislature's intent for me to find the mitigating factors that your counsel has identified outweigh the aggravating factors which the jury has found. [¶] I don't take those mitigating factors lightly. · I understand the pain that you're suffering as a result of your illness.  I understand the trauma you have experienced, but I have to apply the law based upon the evidence and the finding of the jury."

10

## II.

### *Analysis*

### A. Governing Legal Principles

Pursuant to section 1170, subdivision (b), " 'when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction.' " (*People v. Campbell* (2023) 98 Cal.App.5th 350, 390, quoting *People v. Jones* (2022) 79 Cal.App.5th 37, 44.)

Within these constraints, "[a] trial court's sentencing discretion is very broad." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1031.) "[T]he court is free to determine facts that, in its judgment, call for a reduction of sentence to the lower available term." (*People v. Lynch* (2024) 16 Cal.5th 730, 767.) "The current statute also preserves the trial court's discretion to determine whether an upper term sentence is in fact justified." (*Ibid.*) " 'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules.' (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322; see also Cal. Rules of Court, rule 4.409 [all relevant sentencing factors 'will be deemed to have been considered unless the record affirmatively [reflects] otherwise'].)" (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

" ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have

been based on misinformation regarding a material aspect of a defendant's record." [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 424, quoting *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Flores* (2020) 9 Cal.5th 371, 431-432.)

**B. Analysis**

Zarut contends that the record here affirmatively demonstrates the trial court failed to exercise its discretionary authority and sentenced him to the aggravated term because it believed it was compelled to do so by the jury's findings that three aggravating factors were true. As Zarut describes the trial court's explanation for its decision, the court "stated that the 'most significant factor' was that the jury found true the factor in aggravation . . . that defendant engaged in violent conduct that indicated a serious danger to society," "stressed the discretion of the jury in making that determination," stated that sentencing Zarut to probation or the lower term would be " 'contrary to what the jury concluded,' " and "justified its deference to the discretion of the jury" by stating " 'it would be antithetical to the [L]egislature's intent for me to find the mitigating factors that [defense counsel] identified outweigh the aggravating factors which the jury . . . found.' "

We do not see the court's remarks as indicating it deferred to the jury and believed it could not impose less than an upper term sentence. Rather, it appears to us that the court understood "the distinction between the requirement of properly proven facts and the court's exercise of its discretion when determining the significance of those facts." (*People v. Lynch, supra,*

12

16 Cal.5th at p. 767.)  The court's statement that the Legislature had determined a sentence should be enhanced only "based upon a finding of a unanimous jury" recognized that a jury finding on an aggravating factor is a statutory prerequisite to imposing an upper term sentence, but its explanation of the decision to impose the aggravated term described the court's choice.  The court expressly stated that its decision was based on weighing the mitigating circumstances against the aggravating circumstances.  The court explained that it understood the trauma Zarut had experienced, and did not take the mitigating circumstances "lightly" and had taken them into consideration "as mitigating factors to counter the aggravating factors that the jury found."  But, the court continued, "*I* have concluded that the aggravating factors greatly outweigh the mitigating factors" and "for that reason, I am going to impose the upper term of 11 years." (Italics added.)  The court stated that the jury's finding that Zarut's violent conduct "indicates a danger to society" was the aggravating factor "perhaps . . . most significant in *my* decision."  (Italics added.)

As we understand the court's remarks, its emphasis on the jury having found the aggravating factors proven beyond a reasonable doubt reflected its intent to honor the jury's view of the evidence, not as negating the court's reliance on its own discretion and judgment as to the relative weight of the aggravating and mitigating circumstances.  The defense in this case centered on arguments that the victim was the aggressor and Zarut's conduct was justified or excusable.  The jury found Zarut guilty of voluntary manslaughter, not murder, but its findings that the offense involved great violence and that Zarut used a weapon and engaged in violent conduct indicating a serious danger to society demonstrated the seriousness of the conduct the jury found was shown by the evidence.  The defense argument at

sentencing that the circumstances of the offense were unusual, the occurrence was rare and Zarut's violent acts were unlikely to recur was contrary to the jury's finding that Zarut's conduct indicated a serious danger to society, thus explaining the court's statement that "it would be antithetical to the [L]egislature's intent" to find the mitigating factors "outweigh the aggravating factors which the jury has found." The court saw the three aggravating circumstances as "important factors" and further noted that not only did Zarut use a weapon, but his codefendant also had a weapon and Wallace was unarmed and walking his dog.

In short, the record does not affirmatively demonstrate that the trial court failed to exercise its discretionary authority but rather indicates the trial court recognized the jury's findings were essential to its authority to impose an aggravated term and exercised its own discretion in weighing those factors against those that could mitigate Zarut's offense and support a lesser sentence.

## DISPOSITION

The judgment is affirmed.

STEWART, P.J.


We concur.


RICHMAN, J.


DESAUTELS, J.


*People v. Zarut* (A169317)